IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| DARLENE HOLLEY,<br><br>    Plaintiff,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>    Defendant. | Civil Action No. 4:21-cv-109-HLM-WEJ<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Darlene Holley ("Plaintiff" or "Ms. Holley"), by and through undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

**NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Defendant") for violations of her rights under Title VII of the Civil Rights Act of 1964, as

amended ("Title VII") and the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1981.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §1981, venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff filed her Charge of Discrimination with the EEOC on April 16, 2019; the EEOC issued its Notice of Right to Sue on March 17, 2021.

5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## **PARTIES**

6.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

8.

Defendant is now and, at all times relevant hereto, has been a limited liability company engaged in an industry affecting commerce. During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

9.

Defendant may be served with process by delivering a copy of the summons and complaint to Prentice Hall Corporate Services, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

# FACTUAL ALLEGATIONS

10.

Ms. Holley (African-American) began working for Defendant on or about May 30, 2017, as a Salon Manager.

11.

Tammy Hacker was Ms. Holley's General Manager at the Cartersville, GA location.

12.

During Ms. Holley's employment, she and other African-American employees were subjected to ongoing discrimination, retaliation and harassment by Ms. Hacker.

13.

Ms. Hacker would talk down to the African-American employees.

14.

Ms. Hacker would write African-American employees up for things for which did not discipline the white employees.

15.

Ms. Hacker falsely accused Ms. Holley of changing the schedule.

16.

Ms. Hacker undermined Ms. Holley's authority in allowing a white subordinate to use profanity towards Ms. Holley.

17.

Ms. Hacker threatened Ms. Holley's job, claiming, "HR said I just need one reason."

18.

Ms. Hacker also displayed preferential treatment towards the white employees and treated the African-American team members less favorably.

19.

Ms. Hacker was not allowed to drink water on the store, while other employees were permitted to do so.

20.

Ms. Hacker would write African-American employees up for things for which she did not discipline the white employees.

21.

Ms. Hacker failed to take action when a white employee assaulted both an African-American employee, and an African-American guest, on two separate occasions.

22.

Ms. Holley began complaining to the former District Manager, Kerryanne Dishman, in 2017.

23.

In early 2019, Elizabeth Allen (white) became Ms. Holley's new District Manager.

24.

Ms. Holley continued to complain to Ms. Allen about the ongoing harassment and discrimination by Ms. Hacker, yet no action was taken to stop it.

25.

Ms. Hacker blamed Ms. Holley for the store missing its goal on March 16, 2019.

26.

The other department managers (white) were not blamed.

27.

Ms. Holley continued to file internal complaints with District Manager Elizabeth Allen in March 2019.

28.

Instead of investigating Ms. Holley's complaints, Ms. Allen responded that if Ms. Holley was going through so much, why didn't she quit.

29.

Ms. Allen's response was said in front of Ms. Hacker, which only emboldened her to continue the discriminatory treatment.

30.

On or about April 5, 2019, Ms. Hacker gave Ms. Holley a written warning containing false information relating to March 16, 2019.

31.

Despite Ms. Holley's department excelling within the store, she was given a less than favorable performance review by Ms. Hacker.

32.

On April 16, 2019, Ms. Holley filed a Charge of Discrimination with the EEOC alleging race-based discrimination and retaliation.

33.

In or about May 2019, Ms. Holley began reporting Ms. Hacker's actions to Human Resources (HR).

34.

Ms. Holley complained that Ms. Hacker was retaliating by calling her into the office for random things during client services, which forced clients to wait and only put her further behind.

35.

On October 27, 2019, Ms. Holley emailed a formal complaint to Gary Clark, HR Business Partner, South Region.

36.

Ms. Holley met with Mr. Clark on or about November 14, 2019.

37.

At the meeting Mr. Clark acknowledged that Ms. Hacker had mistreated Ms. Holley, but suggested that Ms. Holley "leave the black part out."

38.

Ms. Holley sent another email to Gary Clark on November 15, 2019, concerning issues with a coaching that Ms. Hacker had asked that she do for another African-American employee.

39.

On December 9, 2019, both Ms. Allen and Mr. Clark emailed Ms. Holley that they would be at the store at 9 a.m. the following morning to meet with her and Ms. Hacker.

40.

Ms. Holley had been off the three days prior to the meeting and when she arrived, discovered clients waiting since no one had blocked off the schedule for the meeting.

41.

At the meeting on December 10, 2019, Ms. Holley was given the option of stepping down from her managerial role or be written up.

42.

Ms. Holley refused to step down from her position since her department's numbers and performance were all meeting or exceeding expectations.

43.

On or about December 13, 2019, Mr. Clark issued a write up to Ms. Holley for allegedly poor job performance.

44.

Ms. Holley acknowledged the write up and indicated that she felt it was retaliation for filing a Charge of Discrimination.

45.

Despite an email from Corporate HR on December 27, 2019, acknowledging her emailed complaint, nothing changed.

46.

Defendant was shut down for a period of time due to the COVID-19 pandemic.

47.

Ms. Holley returned to work on May 13, 2020.

48.

On July 11, 2020, Ms. Holley called and texted Ms. Hacker requesting a sick day due to her allergies. Instead of asking additional questions of Ms. Holley, Ms. Hacker had Caleb, the Retail Manager, called to inform Ms. Holley that she was not to return to work for at least ten days, and that Ms. Allen would reach out to let her know when she could return.

49.

Ms. Hacker violated Ms. Holley's HIPPA rights when she disclosed Ms. Holley's medical status to another employee.

50.

All other managers communicated only with Ms. Hacker, as the General Manager, about scheduling and absences.

51.

Ms. Hacker did not require non-black employees who called out sick to remain out of work for ten days.

52.

Ms. Holley called Trina Peterson Garcia, HR, after being told that she had to wait ten days before returning to work.

53.

Ms. Peterson Garcia told Ms. Holley that Ms. Hacker had claimed that Ms. Holley was not returning to work, i.e., that Ms. Holley had quit.

54.

It was only after Ms. Peterson Garcia called Ms. Allen and Ms. Hacker that Ms. Holley was allowed to return to work.

55.

Neither HR nor Ms. Allen would address Ms. Holley's concern about Ms. Hacker disclosing her private medical information to other employees.

56.

Ms. Holley was out of work for two days.

57.

Ms. Holley continued emailing her concerns about Ms. Hacker to HR.

58.

On or about September 23, 2020, Ms. Hacker wrote Ms. Holley and Ms. Talerico up for an alleged Policy Failure.

59.

In approximately late September 2020, Ms. Holley was notified that the Salon Manager position was allegedly being eliminated.

60.

Ms. Holley's last day was October 31, 2020.

61.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

62.

Others outside of the Ms. Holley's protected class, i.e., non-African-American employees, received different and preferential treatment.

## CLAIMS FOR RELIEF

### COUNT ONE: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

63.

Plaintiff re-alleges paragraphs 10-62 as if set forth fully herein.

64.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

65.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

66.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her race.

67.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

68.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## **COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

69.

Plaintiff re-alleges paragraphs 10-62 as if set forth fully herein.

70.

Defendant's actions, as detailed above, in terminating Plaintiff because of her protected activity (complaining of race based discriminatory treatment) constitutes unlawful intentional retaliation in violation of Title VII.

71.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was untertaken in bad faith.

72.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

### COUNT THREE: RACE DISCRIMINATION
### IN VIOLATION OF 42 U.S.C. § 1981

73.

Plaintiff re-alleges paragraphs 10-62 as if set forth fully herein.

74.

Defendant subjected Plaintiff to discrimination and harassment on the basis of her race (African-American).

75.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. section 1981.

76.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of her race.

77.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected her psychological and physical well being.

78.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to her emotional health, and has lost back pay and front pay.

79.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

80.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

**WHEREFORE**, Plaintiff judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

Respectfully submitted the 9th day of June, 2021.

**BARRETT & FARAHANY**

/s/ *Adian R. Miller*
Adian R. Miller
Georgia Bar No. 794647

*Attorneys for Darlene Holley*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com